† ROMULUS COTELL V. STATE OF OHIO.

1. MOTION TO REQUIRE PROSECUTING ATTORNEY TO ELECT ON CERTAIN COUNT IN INDICTMENT.

     The indictment contained four counts, all descriptive of the same transaction. *Held*, it was not error for the trial court to overrule the motion by which it was sought to require the prosecuting attorney to elect upon which count of the indictment he would proceed to trial.

2. INTRODUCTION OF CONFESSION.

     The overruling of an objection by the trial court to the introduction of a confession of the accused on the ground that it was not voluntarily made, should not be reversed by a reviewing court unless clearly satisfied that the trial court erred in finding as a fact from the testimony produced, that such confession was voluntarily made.

†Reversed on authority of Kelch v. State, 55 O. S., 146, for error in charge as to decree of proof required to establish insanity, 55 O. S., 666,

3. CHARGE OF COURT ON QUESTIONS OF MANSLAUGHTER.

In a case of homicide, in which the jury convict the accused of murder in the first degree, the fact that the trial court, in the charge of the jury, did not in all respects correctly define the crime of manslaughter, was not a prejudicial error for which the conviction should be set aside.

4. PROOF OF PURPOSE OR INTENT TO KILL.

The purpose or intent to kill, in general, is proved by the circumstances by what a party does and says, the manner of inflicting wounds, the instrument used and its tendency to destroy life; if palpably calculated to take life, it may be presumed to be so intended.

5. EVIDENCE AND PROOF REGARDING THE QUESTION OF INSANITY.

The law presumes every person who has reached the age of discretion, to be of sufficient capacity as to be responsible for crime, and therefore the burden of proof to establish the defense of insanity in a criminal case, rests upon the defendant asserting it, but a preponderance of the testimony is all that is necessary for that purpose.

HALE, J. (orally.)

The plaintiff in error, Romulus Cotell, was tried at the April term of the court of common pleas of Summit county, upon an indictment containing four counts, charging him with murder in the first degree, in killing Alvin N. Stone. The alleged date of the crime was March 29, 1896.

During the progress of the trial, the third and fourth counts in the indictment were nollied with the consent of the court.

The plaintiff in error was convicted of murder in the first degree on the first count of the indictment and acquitted on the second count. A motion for a new trial was overruled by the court and a death sentence imposed. A bill of exceptions was taken and the record brought to this court for review.

1. At the commencement of the trial, counsel for plaintiff in error moved the court to require the prosecuting attorney to elect upon which count of the indictment he would proceed to trial. This motion was denied and an exception noted.

In this ruling of the court there was no error. There was but one transaction constituting the alleged crime; a somewhat different description of that transaction was contained in each count of the indictment, to meet any phase of the testimony which might be developed on the trial. This was entirely proper and we believe in accordance with the universal practice in the courts of this state.

2. Did the court err in any of the rulings in the admission and rejection of evidence?

The exceptions noted to these rulings of the court are quite numerous, but only a few of which merit discussion. The first of these to be noted is, however, of vital importance and demands careful consideration.

To maintain the charges in the indictment, the state called as a witness Mr. James Doran and proposed to give in evidence to the jury certain statements by the plaintiff in error, in which, it was claimed, he had confessed that he was guilty of the crime charged in the indictment.

To the introduction of this testimony, counsel for the plaintiff in error objected on the alleged ground that the confessions sought to be shown in evidence were not voluntarily made by plaintiff in error, but were forced from him by promise of advantage to be gained thereby, or by fear of some threatened calamity if the confession was withheld.

The contention then was on the part of the state that the confessions sought to be given to the jury were voluntarily made by the plaintiff in

error; and by the defense the contention was that they were not voluntarily made and therefore incompetent.

It will be seen that the competency of this evidence depended upon the fact as to whether they were voluntarily made or not.

To solve that question, five witnesses were examined touching the circumstances under which those statements were made by the plaintiff in error. These witnesses were James Doran, James Burlison, George M. Wright, L. A. DeCelle and R. M. Wanamaker.

This testimony was taken in the absence of the jury, and the trial court found as a fact, from all this testimony, that the statements sought to be given to the jury were voluntarily made by plaintiff in error.

To hold this testimony to be incompetent, this court must reverse that finding of fact made by the trial court.

We have carefully read the testimony of each of those witnesses, and have reached the conclusion that we would not be justified in reversing the findings of the trial court upon that issue. Indeed, we have reached the conclusion that the trial court correctly weighed that testimony and from it all reached the correct conclusion. The objection to the introduction of this testimony therefore, was properly overruled.

The witness Charles H. Sackett called by the state, was asked to describe the condition of the room where the homicide took place soon after the homicide, and having given as best he could, a description of the room, was asked this question: "Could you have gone to the bed without getting your feet bloody on that side?" To which question an objection was sustained and exception taken.

After the witness had exhausted his knowledge of facts concerning the condition of the room, the extent of the blood upon the floor, etc., the plaintiff in error was not entitled to his opinion sought by the question excluded by the court. There was no error in this ruling.

The witness Orange S. Treat called by the state, soon after the homicide, went to the house of Edward Porter, where the plaintiff in error resided. In answer to various questions he had related in part what took place at Porter's house, and among other questions was asked this, "Do you remember how Mr. Porter opened the door? A. I think he opened the door very readily." The plaintiff in error asked the court to exclude this answer which was overruled and an exception taken. The witness then further answered, "He certainly took hold of the latch and opened the door readily." And this also the plaintiff in error moved the court to exclude from the jury, which was overruled and defendant excepted. We think this testimony was entirely competent. As a circumstance bearing upon the fact whether Cotell had left the house of Porter during that night, it was entirely proper to show whether he was behind locked doors or otherwise, and this testimony had some bearing upon that fact.

During the progress of the trial witnesses called by the state were permitted to testify to certain acts of Cotell having a tendency to show an infatuation on his part for Flora Stone.

It is said that such testimony could only have a bearing in support of the third and fourth counts of the indictment, which counts charged Cotell with the commission of the crime while attempting to commit a rape upon the person of Flora Stone.

We do not agree with counsel in this claim. We think it was entirely competent under either count of the indictment to show the feelings of Cotell toward Flora Stone. His infatuation for her is a circum-

stance proper to be considered in accounting for his presence at the Stone residence that night.

Flora Stone, a witness called by the state, having testified to certain statements or expressions made by the murderer when in the house at Stone's was asked this question : "When he said these words, ' Where is the other one? 'tell us whether you recognized his voice.'" To which question an objection was overruled and exception taken.

We think this question was entirely competent—as competent as it would have been to ask her if she saw the person in the room. There is no suggestion in the question that she recognized the voice as the voice of Cotell. That fact was elicited by a further question.

The witness Wright, called upon the part of the state, gave an account to the jury of an interview he had with Cotell, stating that as he left at the close of the interview, Cotell said to him, "You think I am innocent, don't you?" He was then asked, "What was his appearance when you turned?" His answer was, "His face, especially his eyes had a remarkable look of terror and wildness in them, such as one seldom sees." Objection was taken to the answer, not to the question. The answer may be a little vivid in its expression, but we are not prepared to say incompetent.

During the cross-examination of the witness Edward Porter, called by the state, he was asked the following question, "Romie always spoke kindly of the Stone's, did he not?" To which an objection was sustained and exception taken. In passing upon this question the court stated to counsel that they might show fully the relations existing between the accused and the Stone's and all facts and circumstances bearing upon that question, but could not in this general way give the declarations of the accused in his own behalf.

It is very clear that there was no prejudicial error in the exclusion of this question for which the case should be reversed.

Without considering this branch of the case any further we will simply say that we have examined very carfully each and every exception noted to the admission and exclusion of testimony, and we find nothing in all these exceptions, of which the plaintiff in error has any just ground of complaint.

We think the trial court in all the rulings upon the question of evidence, gave the prisoner the benefit of any doubt that might exist as to the rule of law, and that certainly no error intervened in these rulings, for which the judgment should be reversed.

Again, several exceptions are taken to the charge of the court.

*First*—It is claimed that the court did not correctly define the crime of manslaughter.

The court said to the jury : "Manslaughter is where killing is unlawful, but without malice, without deliberation or premeditation or purpose to kill; in other words, whoever kills another without malice, either expressed or implied, but while in the commission of some unlawful act, is guilty of manslaughter."

It is not claimed that this is not a correct statement, so far as it goes.

It is true, intention or purpose to kill may be present in the crime of manslaughter, where the killing is without malice, upon a sudden quarrel; but so far as it could have any application to the present case, we think that the court properly defined the crime of manslaughter.

However that may be, there is no claim that the court did not properly define the crime of murder in the first degree. The jury convicted

the accused of that crime, hence it was wholly immaterial whether the crime of manslaughter was correctly or incorrectly defined. It was without any prejudice whatever to the plaintiff in error.

Upon the subject of the purpose or intent to kill, the court charged the jury, "The purpose or intent to kill in general, is proved by the circumstances, by what a party does and says, the manner of inflicting wounds, the instrument used and its tendency to destroy life. If palpably calculated to take life, it may be presumed to be so intended.

Exception was taken to this statement—not as we understand it that it was not a correct statement of the law, but that the jury should have been cautioned in connection with this statement that no inference of premeditation and deliberation could be drawn from the use of a deadly weapon; in other words, it is said that the jury might have misapplied this correct statement of the law.

We do not believe that any such inference is authorized.

It is further insisted that the court erred greatly to the prejudice of the plaintiff in error, in the instructions given to the jury on the subject of insanity, and more especially as to the extent of the burden of proof which rests on the defendant in a criminal case, to establish that defense.

The rule upon this subject has been many times announced by the supreme court of the state, and is this : "The burden of proof to establish the defense of insanity in a criminal case, rests upon the defendant, but a preponderance of the testimony is all that is necessary for that purpose."

The rule of law applicable to a criminal case, where an issue of insanity of defendant, is made, was considered by the supreme court in the case of *Clark* v. *State*, 12th O. R., 483. The charge of the trial court to the jury in this case, which had been reviewed by the supreme court, was adopted by the trial court in the case of *Loeffner* v. *The State*, 10 Ohio Stat., 598. The language adopted by that court and stated as the law of the case, was, so far applicable to the point under discussion, as follows : "In trying this question, you will bear in mind that the law presumes every person of the age of fourteen years or upward, to be of sufficient capacity to form the criminal purpose to deliberate and premediate upon the act which malice, anger, hatred, revenge or other evil disposition might impel him to perpetrate. To defeat this legal presumption which meets the defense of insanity at the threshold, the mental alienation relied upon by the accused must be affirmatively established by positive or circumstantial proof. You must be satisfied from the evidence that the perverted condition of the faculties of the mind, indicated in the main question which I have already stated, as excusing from crime, did exist at the time Sells was killed. It is not sufficient if the proof barely shows that such a state of mind was possible, nor is it sufficient if it merely shows it to have been probable ; the proof must be such as to annul the legal presumption of sanity ; it must satisfy you that he was not sane."

The correctness of this charge was certainly considered and determined by the supreme court in the review of that case. It must have been the subject of some discussion at least, for the conclusion reached was not concurred in by all members of the court.

The ninth paragraph of the syllabus reads : "As the law presumes every person who has reached the age of discretion, to be of sufficient capacity to be responsible for crimes, the burden of establishing the insanity of the accused affirmatively, to the satisfaction of the jury on the

trial of a criminal cause, rests upon the defense. It is not necessary, however, that this defense be established beyond a reasonable doubt; it is sufficient if the jury is reasonably satisfied by the weight or preponderance of the evidence that the accused was insane at the time of the commission of the act."

These two cases are cited with approval by the court in *Bergin* v. *The State*, 31 Ohio State, 111. Judge Gilmore, after quoting from the charge of the court, as follows: " To defeat the legal presumption of sanity which meets the defense of insanity at the threshold, the burden of establishing mental alienation of the accused affirmatively rests upon the accused"--says, " The counsel for the motion admits that this is held to be the law in Ohio, but ably argues that it is not good law. If the question was an open one a majority of the court would be in favor of the rule as it stands, and inasmuch as the rule has been so long established and so repeatedly recognized in this state, as shown by the cases below cited, the court is unanimous in the opinion that it should not be changed by judicial action." He cites *Clark* v. *The State*, 12th Ohio, 483; *Leoffner* v. *The State*, 10 Ohio St., 598; *Silvus* v. *The State*, 22 Ohio St., 90; *Bond* v. *The State*, 23 Ohio St., 349; *Weaver* v. *The State*, 24 Ohio St., 584.

In the case at bar the court, upon the subject of the burden which rested upon the defense to establish insanity, instructed the jury: " He (plaintiff in error) has interposed to meet the claim of the state, the plea of unsoundness of mind or imbecility, and this plea, whilst he must make it good by a preponderance of the testimony, in order to avail him or excuse him from the crime committed, if he did commit one, is to receive due and careful consideration at your hands. In the first place, the law presumes every person who has reached the age of discretion, to be of sufficient capacity as to be responsible for crime, and therefore the burden of establishing the defense of insanity or mental weakness of the accused, affirmatively, to the satisfaction of the jury, rests upon the defendant. It is not required, however, that this defense be established beyond a reasonable doubt, but it is sufficient if the jury is reasonably satisfied by the weight or preponderance of the evidence, that the accused was insane at the time of the commission of the act."

After defining insanity that constitutes a defense to a criminal charge, the court adds, " It is not enough I say to you that the proof barely show that such a state of mind was possible, nor is it sufficient if it merely shows it to have been probable ; the proof must be such as to overcome the legal presumption of sanity, it must satisfy you that he was not sane."

"Again, I say to you that if the proof satisfy you of his insanity at the time of the committing of the act, though such defenses are not uncommon in the law, yet it must be regarded by you as a full and complete humane defense when satisfactorily established. If not satisfactorily established, then it should not avail the prisoner at the bar as a pretext or means of escaping punishment imposed by law."

This is the language employed in *Leoffner* v. *The State*, and approved by the supreme court.

Again, the court upon this subject said to the jury : " In regard to the eighth proposition as I have enumerated them above, ascertain whether the accused at the time of the act of killing, was sufficiently clear in intellect to weigh and appreciate his act—did he know the nature and quality of his act, and his relations to the person whom his act in-

· jured; did he know that that act was wrong, and had he will power enough to resist and abstain from the act, was he a free agent to choose the right and reject the wrong? If you find these facts substantially as I have stated, in favor of the state and against the accused, then the defendant is not entitled to an acquittal on the ground of insanity or defect of reason. If you find that the contrary has been established by a preponderance of the evidence, on the part of the accused, then that would end your investigations and your verdict should be not guilty of any crime. It is not sufficient to show that the accused at the time of the act of killing was possible or probably insane, the proof must be such as to overcome the presumption of sanity, and by a preponderance of the testimony establish his insanity."

It is true the court here has said that "it is not sufficient to show that the accused at the time of the act of killing was possibly or probably insane," but this is only a part of a sentence, the remaining language of which is, "the proof must be such as to overcome the presumption of sanity, and by a preponderance of the testimony establish his insanity."

It is plain that by the terms " possibly " and " probably insane," the court meant something less than the establishment of the fact of insanity by a bare preponderance of the testimony, and the jury could not have been misled as to the true rule.

Again, the plaintiff in error was convicted of murder in the first degree. Among other instructions given to the jury to be observed in determining the degree of the crime, the court said to the jury this: "As bearing upon the question of deliberation and premeditation, an essential element of murder in the first degree, as I have before explained to you, ascertain whether the accused, at the time of doing the act, if you find that he did it, was so far affected by insanity, partial or temporary, or by reason of a diseased, weakened and impaired intellect, as to interfere with, or in any manner affect his powers of mind, as to deliberate and premediate, design and purpose as to the act charged against him; give it careful consideration, as bearing upon the degree of crime for which he is responsible under the several counts of the indictment. If therefore, in your consideration of the fourth proposition that I have above submitted to you, you find that the accused was so far deprived of reason, judgment, memory, or free will, as to be incapable of forming the design to kill, or of deliberating and premeditating upon it, then you will so find according to the fact.

So the jury must have found that the mind of the accused was not so weakened or so far affected by insanity, partial or temporary, that he was incapable of deliberation or premeditation.

There were in fact two propositions made by counsel for the accused, and two given to the jury. One defining that insanity that excuses from crime and which, if found by the jury, would authorize a verdict of not guilty; the other defining that degree of insanity or mental weakness that would reduce the grade of the crime below murder in the first degree. Under the last proposition, the jury were told, that partial insanity, or an intellect so weak as to leave the accused without the power to deliberate and premeditate was sufficient to reduce the grade of the offense to murder in the second degree—a much less degree of insanity would excuse these elements of murder in the first degree than would excuse from the entire criminal act, and yet the jury found that even this partial insanity did not exist, that the accused had the power to deliberate and premeditate on the act done.

It may, therefore, be doubted whether the charge complained of was at all prejudicial to the plaintiff in error.

In addition to what I have quoted, the court, at the request of counsel for the plaintiff in error, instructed the jury as follows:

"In order to convict the defendant of murder in the first degree, you must find that the act was done purposely, of deliberate and premeditated malice, and purposely in this case, implies an act of the will, an intention, a design to do an act. It presupposes the free agency of the actor. Deliberation and premeditation require action of the mind. They are operations of the intellectual faculties and require the exercise of reason, reflection, judgment and decision, and cannot happen in any case where the faculties of the mind are deranged, destroyed or do not exist. The crime of murder in the first degree can, therefore, only be perpetrated by a free agent capable of acting or abstaining from an action. He must have a sane mind, capable of reason, reflection and premeditation and under control of the will."

Again, "If you find that the defendant actually committed the homicide complained of, and that he was not insane within the legal definition of that term at the time of its commission, and if you also find that, while not so insane, he was in fact of so weak mind as to be incapable of premeditating or deliberating upon the act, or that he was not fully conscious of his purpose or act, or that he was without the power of determining the true nature and character of the act, then the act would not be murder in the first degree, but murder in the second degree and you should so find."

Upon careful review of the charge of the court as applicable to the case made in the proof, we are of the opinion that the plaintiff in error has no just ground of complaint of the law as stated to the jury by the court upon the subject of insanity and of the burden of proof resting on the accused to establish the defense.

After the rendition of verdict, the court overruled a motion for a new trial, to which exceptions were noted.

The grounds relied upon for a motion for a new trial were:

1. That the verdict was against the weight of the evidence.

2. Misconduct of jurors during the trial of the case and incompetency of a juror by reason of having expressed an opinion.

3. Newly discovered evidence.

If we are right in the rulings already made upon the admission of the confessions of the plaintiff in error, we see no foundation for the claim that the verdict is contrary to the evidence.

Without stopping to review the entire testimony, which we have most carefully considered, we can reach no other conclusion than that the statements to which reference has been made of the plaintiff in error, in connection with the many facts and circumstances disclosed in the evidence, fully justified the jury in the conclusion reached.

Upon the question of the alleged misconduct of jurors, the court took the sworn testimony of witnesses produced by the defense, and after patiently hearing that testimony, came to the conclusion that there was no such misconduct of the jurors as to authorize the granting of a new trial, and in this, we think the court was entirely correct.

As to the claim that one of the jurors had, previous to the trial, expressed an opinion unfavorable to the plaintiff in error, we think the evidence, considered as a whole, failed to show that any statement was made by the juror which should disqualify him to sit in the case.

Certainly there was nothing in the claimed newly discovered evidence which would authorize the granting of a new trial.

On a careful review of this entire record, we reach the conclusion that the rights of the plaintiff in error, at every stage of the proceeding, were fully protected by the trial court, and that there is no error upon this record, for which, a new trial should be granted.

*Judgment affirmed.*

*Messrs. R. M. Wanamaker, Pros. Atty.*, and *R. W. Saddler*, Attorneys for State.

*Harvey Musser* and *E. F. Voris*, Attorneys for Accused.